UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| RICHARD HARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:20-cv-01119-JHE |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION[1]

Plaintiff Richard Harris ("Harris") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for supplemental security income ("SSI"). (Doc. 1). Harris timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Harris protectively filed an application for SSI on January 2, 2018, alleging disability beginning on that date.[2] (Tr. 35). The Commissioner initially denied Harris's claim, (tr. 99-103), and Harris requested a hearing before an ALJ, (tr. 104-06). After a July 9, 2019 hearing, the ALJ denied Harris's claim on August 8, 2019. (Tr. 32-48). Harris sought review by the Appeals

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

[2] Harris initially alleged disability beginning June 6, 1994, but he subsequently amended his onset date to January 2, 2018. (Tr. 50, 166).

Council, but it denied his request for review on July 20, 2020. (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner. On August 5, 2020, Harris initiated this action. (Doc. 1).

Harris was forty-three years old on the date he filed his application for SSI. (Tr. 42). Harris has a GED, but no past relevant work. (Tr. 42, 51-52).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law,

---

[3] In general, the legal standards applied are the same whether a claimant seeks SSI or disability insurance benefits ("DIB"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Harris had not engaged in substantial gainful activity since January 2, 2018, his alleged onset date. (Tr. 37). At Step Two, the ALJ found Harris has the following severe impairments: somatoform disorder with back pain, bipolar disorder, and anxiety disorder. (*Id.*). At Step Three, the ALJ found Harris does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 37-39).

Before proceeding to Step Four, the ALJ determined Harris's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Harris has the RFC

> to perform medium work as defined in 20 C.F.R. 416.967(c) except the claimant can occasionally push and pull with the lower extremities; the claimant cannot climb ladders or scaffolds or crawl; the claimant can tolerate occasional exposure to extreme heat, extreme cold, and vibration but should have no exposure to dangerous machinery or unprotected heights; during a

4

> regularly scheduled workday or the equivalent thereof, the claimant can understand and remember short and simple instructions but is unable to understand and remember detailed and complex instructions; the claimant can do simple, routine, and repetitive tasks but is unable to do detailed or complex tasks; the claimant should have no more than occasional contact with the general public; the claimant can deal with changes in the workplace, if introduced occasionally and gradually and are [sic] well-explained.

(Tr. 39-40). At Step Four, the ALJ determined Harris had no past relevant work. (Tr. 42). At Step Five, the ALJ determined, based on Harris's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Harris could perform. (Tr. 42-43). Therefore, the ALJ determined Harris has not been under a disability and denied his claim. (Tr. 43-44).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Harris raises two objections to the denial of SSI: (1) that the Appeals Council erred by failing to adequately consider records he submitted on appeal,[5] which he says was solely on the basis that the records were dated after the date of the ALJ's decision; and (2) that, considering the evidence submitted to the Appeals Council, the denial of SSI is not supported by substantial

---

[5] Harris was originally represented by a different attorney, but his current counsel pursued the appeal and submitted the records at issue.

5

evidence. (Doc. 10 at 1). As the Commissioner notes, (doc. 11 at 4, n.2), these nominally separate claims essentially assert the same error: that the Appeals Council should have found the evidence chronologically relevant. Accordingly, the undersigned addresses them as a single issue.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). The Appeals Council must review a case if it receives additional evidence that is new, material, and chronologically relevant. 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to . . . *de novo* review," and an erroneous failure to consider such evidence warrants remand. *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). New evidence is noncumulative evidence that was not previously previous presented to the ALJ, and that evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). And evidence is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." *Foster v. Colvin*, No. 12-CV-4038-VEH, 2014 WL 1338095, at *4 (N.D. Ala. Mar. 28, 2014) (citing 20 C.F.R. § 404.970(b)). Even records that postdate the ALJ's decision may be chronologically relevant when they assess the conditions that existed prior to the decision and there is no evidence of deterioration. *Washington*, 806 F.3d at 1322.

After the ALJ denied his claim on August 13, 2019, Harris submitted additional evidence including three pages of records from CED Mental Health Center, (tr. 15-17), and a one-page

medical source statement from Danielle White, ALC, NCC, (tr. 31).[6]  As to the first of these, the CED Mental Health Center records indicate that on January 23, 2020, Harris attended an individual therapy session with Ms. White where he reported "continued mood swings and anxiety."  (Tr. 15).  Harris makes no argument for why this is chronologically relevant, instead blockquoting several cases where judges have found evidence to be chronologically relevant even when it postdated an ALJ's decision.  (*See* doc. 10 at 8-17).  That does not address why *this* evidence is chronologically relevant in *this* case.  And even assuming the records were chronologically relevant (i.e., that "continued" implies this report connects back to mood swings Harris experienced prior to the ALJ's decision, which Harris does not actually argue), the ALJ discussed the record evidence indicating Harris experienced mood swings, (tr. 40-41), and the additional records do nothing more than duplicate Harris's previous reports.  There is nothing in the new records to indicate Harris has any greater limitations than the ALJ found.  Therefore, the evidence is both cumulative and not material, and the Appeals Council did not err by failing to consider it.

  Ms. White's medical source statement is a form on which she circled various limitations (e.g., Harris cannot interact with supervisors or co-workers, but can perform activities within a schedule and be punctual within customary tolerances).  (Tr. 31).  Contrary to a bolded statement repeated in two locations in Harris's brief in support of disability and two additional locations in his reply brief, Ms. White's statement did *not* indicate that the "[t]hese limitations did exist back to 1/2/18."  (Doc. 10 at 7, 18; doc. 12 at 2, 5).   Instead, Ms. White did not circle either "yes" or "no" on the form.  (Tr. 31).  There is nothing on the form, or elsewhere in the record, to indicate

---

[6] Harris submitted other evidence as well, (*see* tr. 2), but he does not argue the Appeals Council erred by failing to consider it.

this statement is chronologically relevant.[7] Accordingly, the Appeals Council did not err by declining to consider it.[8]

### VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Harris's claim for supplemental security income is **AFFIRMED**.

DONE this 23rd day of September, 2021.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[7] The Commissioner also argues Ms. White is a counselor and not an acceptable medical source, so she cannot render a medical opinion. (Doc. 11 at 7). However, the Commissioner cites outdated regulations to support this. Because Harris filed his claim after March 27, 2017, 20 C.F.R. § 416.913 applies. Under that regulation, any "medical source"—i.e., "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law," 20 C.F.R. § 404.1502(d)—may render a medical opinion. 20 C.F.R. § 416.913(a)(2). *See also Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, SSR 96-2P, 2017 WL 3928298 (S.S.A. Mar. 27, 2017) ("[I]n claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions."). It is unclear from the record whether Ms. White meets the current definition of "medical source," and Harris's reply brief does not address the issue.

[8] Assuming Harris's second argument—that, when the evidence he submitted to the Appeals Council is taken into account, the denial of benefits was not supported by substantial evidence—could be construed as a separate argument, there is no basis to reconsider the entire record when the Appeals Council did not err in considering the evidence at issue.